**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**DAVID GREEN**                                                                 **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 3:22-cv-182-JMV**

**KILOLO KIJAKAZI,** *Commissioner of*
*Social Security*                                                    **DEFENDANT**

## ORDER

### I. INTRODUCTION

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The undersigned held a hearing on March 21, 2023 [16]. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

### II. STATEMENT OF THE CASE

A. **Administrative Proceedings**

Plaintiff filed an application for SSI on August 26, 2020, alleging an inability to work since February 1, 2017, due to physical and mental impairments. Tr. at 11, 135-41, 149. SSA denied Plaintiff's application initially and upon reconsideration. Tr. at 11, 69-71, 78-79. At

Plaintiff's request, an ALJ held an administrative hearing on December 17, 2021, at which Plaintiff, represented by counsel, and a vocational expert testified. Tr. at 23-42, 80-83.

### B. Statement of Facts

Plaintiff was born in 1988 and was a younger individual (age 18 to 49) at all times relevant to this decision. Tr. at 17, 157; s*ee also* 20 C.F.R. § 416.963(e) (we consider a young individual's age (under 50) will not seriously affect the ability to adjust to other work). In his disability report, Plaintiff alleged disability since February 1, 2017, due to physical and mental impairments. Tr. at 149, 157. Plaintiff has a high school education and no past relevant work. Tr. at 17, 150; *see also* 20 C.F.R. § 416.965 (defining past relevant work).

### C. ALJ's Decision

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 26, 2020, the date of the application. Tr. at 13. At step two, the ALJ found that Plaintiff had only one severe impairment: Crohn's disease. Tr. at 13. The ALJ also found that Plaintiff had non-severe medically determinable impairments, including depression and anxiety. Tr. at 14. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. at 14. Next, the ALJ found that Plaintiff had the RFC to perform light work, with the following limitations:

> He can occasionally balance, stoop, kneel, crouch, or crawl. He must avoid concentrated exposure to extreme cold, heat or humidity. He must avoid concentrated exposure to unprotected heights and hazardous moving machinery. He needs to be stationed in close proximity to a restroom. He can sustain concentration, persistence, and pace for two-hour blocks of time. He requires a low-stress work environment. He cannot perform telephone work.

Tr. at 15.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. at 16. However, at step five, the ALJ found that Plaintiff was able to perform other jobs in the national economy. Tr. at 17. Therefore, the ALJ properly concluded that Plaintiff was not under a disability as defined in the Act from August 26, 2020, the SSI application date, through January 12, 2022, the date of the ALJ's decision. Tr. at 17-18.

### III. DISCUSSION

**A. Did the ALJ err in evaluating the severity of Plaintiff's mental impairments and associated functional limitations?**

Plaintiff disagrees with the ALJ's finding that his mental impairments (depression and anxiety) were non-severe, and Plaintiff argues that the ALJ failed to perform an analysis in accordance with the special technique described in 20 CFR 404.1520a. Specifically, Plaintiff asserts SSA requires rating the degree of functional loss resulting from the mental impairments in four areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

In addition to the ALJ's alleged failure to perform this technique, Plaintiff contends the ALJ's assessment of Plaintiff's mental health impairments fails to properly consider the evidence of record. For this latter argument Plaintiff first cites to diagnoses in the treatment notes of a "major depressive disorder, recurrent, mild and a generalized anxiety disorder" and a comment in that record that, "Mr. Green continues to need outpatient treatment. He continues to exhibit symptoms of an emotional disorder that interfere with day-to-day functioning and requires continued treatment." Tr. at 316, 319. Second, he relies on the fact that on at least several

occasions, Plaintiff also complained of depression and/or stress in the record to Dr. Chiemprabha, the doctor who treated his Crohn's condition. Tr. at 218, 226, 340, 346, 355. Third, Plaintiff notes that Dr. Chremptubha completed a medical source statement on his behalf where he opined that Plaintiff would have poor abilities in maintaining attention for two-hour segments, a poor ability to complete a normal workday and workweek without psychologically based assumptions, and that he would likely miss work three or more times a month due to his impairments. Tr. at 358. Finally, Plaintiff notes he was prescribed medicine at Odom Rural Health Clinic for depression. Tr. at 241, 246, 266, 274, 293. And, on one occasion, he presented there "requesting adhd medication. States in the past, he took several test/questionnaires online that leads him to believe that he may have adhd and possible autism. States at the time, he did not want to address the results with PCP. Did ok with grades in school, socially, he was a 'loner'. Continues to avoid social interactions. Anxiety is bad, to where he can not sleep at night." Tr. at 268.

  In support of the ALJ's decision regarding the severity of Plaintiff's alleged mental impairment, the Commissioner argues first that, although there is case law for requiring application of the regulatory special technique to determine if a claimant has a severe mental impairment at step two, the Fifth Circuit provided the appropriate standard for doing so in this Circuit in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). There it held an impairment is found "not severe" at step two in the sequential evaluation process when medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *See Stone*, 752 F.2d at 1101; *see also* SSR 85-28, 1985 WL 56856. And, in any event, the Commissioner argues – and the court finds persuasive – that any error in the application of the regulation was harmless in light of the fact that, as the ALJ found, and as is

discussed below, the medical record does not contain objective medical findings of mental impairment. Tr. at 14. Further, the state agency psychological medical consultant, Bryman Williams, Ph.D., found there was insufficient evidence to diagnose a medically determinable mental disorder. Tr. at 14, 48. And, while the ALJ acknowledged that in October 2019, Plaintiff's primary care provider, George Abraham, M.D., diagnosed Plaintiff with dysthymic disorder, Tr. at 14, 248, and Plaintiff was later diagnosed with anxiety in August 2021, Tr. at 14, 268, the Commissioner correctly notes that a diagnosis alone does not establish a severe or disabling impairment. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

      The ALJ found that despite Plaintiff's occasional complaints of anxiety and/or depression, the treatment records showed no evidence of mental impairment. Tr. at 14. Indeed, the court agrees that a great deal of the treatment records show there was no evidence of depression, anxiety, or agitation. Tr. at 219, 221, 224, 341, 346. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." *See* 20 C.F.R. § 416.908. Furthermore, Plaintiff's few mental status examinations remained consistently within normal limits throughout the relevant period, which indicates Plaintiff's alleged symptoms were not significant. Tr. at 240, 244, 247. Moreover, the record shows that on multiple occasions, Plaintiff, in fact, denied having any symptoms of anxiety or depression, which undermines his allegations of mental limitations. Tr. at 229, 239, 243, 247, 273, 282, 292. Thus, other than Plaintiff's own intermittent subjective complaints, the ALJ properly determined that there was insufficient evidence to establish the presence of any severe mental impairments. Tr. at 14. Due to the lack of objective medical evidence, the ALJ properly determined there is no evidence provided in the record of any functional limitations due to mental impairments. Tr. at 14; *see*

*also Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (subjective complaints must be corroborated by objective medical evidence). Here, the court agrees Plaintiff fails to meet his burden of proving a severe impairment at step two of the sequential evaluation process. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

In this regard, the court also finds that the plaintiff's psychiatric evaluation, performed by mental health nurse practitioner, Jessica Raines, PMHNP, in September 2021, Tr. at 14, 311-18, consistent with other treatment records in the record, demonstrates that while Plaintiff makes his own subjective complaints, his actual mental status examination was normal. Tr. at 316. Upon examining Plaintiff, Ms. Raines noted the following:

> [Plaintiff] appears friendly, attentive, communicative, and relaxed. He exhibits speech that is normal in rate, volume, and articulation and is coherent and spontaneous. Language skills are intact. Mood presents as normal with no signs of either depression or mood elevation. Affect is appropriate, full range, and congruent with mood. Associations are intact and logical. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. Suicidal ideas or intentions are denied. Homicidal ideas or intentions are denied. Vocabulary and fund of knowledge indicate cognitive functioning in the borderline range. Insight into problems appears fair. Judgment appears fair. There are no signs of anxiety. [Plaintiff] is fidgety. [Plaintiff's] behavior in the session was cooperative and attentive with no gross behavioral abnormalities.

Tr. at 316.

Plaintiff also denied having any stress related symptoms; problems associated with anger; chemical dependency problems; any behaviors typical of conduct disorder; symptoms of grief; any symptoms of oppositional defiant disorder; and any symptoms of personality disorder. Tr. at 313.

And, when next seen by Ms. Raines on October 18, 2021, Plaintiff's exam revealed:
EXAM: Mr. Green presents as calm, attentive, communicative, and relaxed. He exhibits speech that is normal in rate, volume, and articulation and is coherent and spontaneous.

> Language skills are intact. Mood presents as normal with no signs of either depression or mood elevation. Affect is appropriate, full range, and congruent with mood. Associations are intact and logical. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. Suicidal ideas or intent are denied. Homicidal ideas or intentions are denied. Vocabulary and fund of knowledge indicate cognitive functioning in the borderline range. Insight into problems appears fair. Judgment appears fair. There are no signs of anxiety. There are no signs of hyperactive or attentional difficulties. Mr. Green's behavior in the session was cooperative and attentive with no gross behavioral abnormalities. No signs of withdrawal or intoxication are in evidence. Sitting blood pressure is 124/87. Sitting pulse rate is 67.

Tr. at 321.

Ms. Raines also indicated that Plaintiff was never psychiatrically hospitalized, nor did he receive any outpatient mental health treatment. Tr. at 313-14; *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (Plaintiff's lack of [mental health] treatment was an indication of non-disability). Accordingly, based on the medical evidence as a whole, the ALJ properly found that Plaintiff's alleged depression and/or anxiety did not cause more than minimal mental limitations. Tr. at 14; *see also Stone*, 752 F.2d 1109.

Finally, while the ALJ and the court note that in November 2021, Dr. Chremptubha, submitted a checkmark Medical Assessment of Ability to Do Work Related Activities (Mental), in which he opined that Plaintiff's ability was poor in 3 out of 14 areas of mental functioning, those being the ability to [avoid] episodes of decompensation (lasting 2 weeks or more within a one year period); the ability to maintain, remember, and carry out short and simple instructions; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, Tr. at 357-58 (the remaining 11 categories of mental functioning being rated "good"), Dr. Chremptubha is a general practice physician and not a mental health professional and courts have noted the limited evidentiary value of evidence in a "checkmark" format. *See McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006). Moreover, the lack of corroborating objective medical evidence as outlined heretofore, and in Dr.

Chremptubha's own records, to support the "checkmark" form regarding Plaintiff's mental status makes these checklist opinions unworthy of credence. For example, aside from sometimes complaining of depression, Dr. Chremptubha's exams on 8/1/18, 2/21/19, 1/21/21, 3/18/21, 4/21/21, and 6/17/21 – essentially every occasion on which Plaintiff saw Dr. Chremptubha – revealed "no evidence of depression, anxiety or agitation." Tr. at 212-33, 324-56.

Under these facts, where there is no evidence of functional limitations imposed by depression or anxiety, remanding this case merely to have an ALJ complete the PRT technique would produce the same result. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (the major policy underlying harmless error is to preserve judgments and avoid waste of time).

    **B. In addition to Dr. Chremptubha's check mark mental opinion, the ALJ properly considered his checkmark Crohn's and Colitis Medical Source Statement.**

Dr. Chremptubha also completed a checkmark Crohn's and Colitis Medical Source Statement on 11/12/21, in which he opined that Plaintiff could sit for about two hours over the course of an eight-hour workday; he could not stand for two hours over the course of an eight-hour workday; he would need the option to sit or stand at will; he would need access to a restroom, and would take two to three unscheduled breaks per workday; he could lift ten pounds occasionally; and he could occasionally twist, stoop, crouch, or climb stairs, and rarely climb ladders. Tr. at 16, 361-62. Dr. Chremptubha opined that Plaintiff would likely be "off task up to 20% of the of a typical workday and he was capable of performing low stress work. Tr. at 16, 362. Finally, Dr. Chremptubha estimated that Plaintiff would miss more than four days of work per month due to symptoms caused by Crohn's disease. Tr. at 16, 362.

However, as explained by the ALJ and found by the undersigned, Dr. Chremptubha's actual medical records clearly do not support and are inconsistent with such restrictive

limitations. For example, those records reflect that Plaintiff on 9/26/17 and again when next seen by Dr. Chremptubha on 8/1/18, was "doing well"; his physical exam was normal; he had no pain and normal range of motion; normal judgment and insight; no weakness and no diarrhea. Tr. at 223-26. When again seen by Dr. Chremptubha on 2/21/19, Plaintiff was noted to be doing well; denies having flares; denies black bloody or loose stools, no diarrhea, or pain. Tr. at 220-21. When next seen on 8/8/19, Plaintiff announced he was moving out of the area but was having no loose stools, no abdominal pain or decrease in appetite. Tr. at 339. Notably, Plaintiff did not return again to see a doctor for his Crohn's condition until 1/21/21 when he returned to see Dr. Chremptubha. His physical exam at that time was again normal. Tr. at 354-56. When seen the next time on 3/18/21 for a pre-colonoscopy physical, he again was found to be without any complaints and had a normal physical exam. Tr. at 349-50. His colonoscopy, when reviewed by Dr. Chremptubha on 4/21/21, "looked good" and he denied gastrointestinal problems and his physical exam was again normal. Tr. at 345-46. When last seen by Dr. Chremptubha on 6/17/21, Plaintiff was "doing well, 3 formed stools a day, no diarrhea or blood in stool no abdominal pain but feels fatigue if he pushes himself too hard." His physical exam was all normal. Tr. at 340-41.

Despite these benign medical findings and positive response to prescribed medication, the ALJ gave Plaintiff the benefit of the doubt and included limitations in the RFC finding to accommodate any potential "flare-ups" of his Crohn's. Tr. at 16. Specifically, the ALJ determined that Plaintiff needed to work in close proximity to a restroom; he could sustain concentration, persistence, and pace for two-hour blocks of time; he required a low-stress work environment; and he could not perform telephone work. Tr. at 15.

Nevertheless, Plaintiff complains that the ALJ did not adequately explain what limitations included in his RFC would accommodate potential Crohn's flare ups and that he

would actually need unscheduled restroom breaks 2-3 times a day during a flare, Tr. at 361, that he would likely be off task about 20% of the workday day due to his symptoms, and that he would likely miss more than four days per month. The court is not persuaded. As delineated above, there is actually no objective medical evidence of Plaintiff experiencing significant gastrointestinal issues, much less debilitating flares, throughout his treatment with Dr. Chremptubha. In fact, he apparently sought no GI treatment at all from 8/8/19 to 1/21/21 and even when he was seen for his Crohn's, his actual exams were all normal – including his GI exams. In short, the court finds there is substantial evidence to support the ALJ's decision and regulatory error, if there was any, was harmless.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the ALJ's January 12, 2022, decision is affirmed.

**SO ORDERED** this, the 28th day of March, 2023.

/s/ Jane M. Virden
United States Magistrate Judge